Michelle **OLIVER**, et al., Plaintiffs,

and

Kalamazoo Education Association and Michigan Education Association, Plaintiffs-Intervenors,

v.

**KALAMAZOO BOARD OF EDUCATION**, et al., Defendants.

No. K88–71 C.A.

United States District Court, W. D. Michigan, S. D.

Oct. 7, 1982.

Michael W. Sussman, Brooklyn, N. Y., for plaintiffs.

Thomas A. Baird, Foster, Swift, Collins & Coey, Lansing, Mich., for KEA and MEA.

Arthur Staton, Ford, Kriekard, Staton & Allen, Kalamazoo, Mich., for KBE.

Richard Gartner, Asst. Atty. Gen., Lansing, Mich., for State of Michigan.

## OPINION

FOX, Senior District Judge.

In an opinion dated September 30, 1980, this court ordered the Kalamazoo Board of Education (KBE) to recall all black tenured teachers which it had laid off in staff reductions due to declining enrollment and financial resources. 498 F.Supp. 732 (1980). The court also ordered KBE to implement a 4:1 ratio for further recalls. In so ordering, the court rejected both straight seniority recall, which was provided for in the contract and supported by the Kalamazoo Education Association (KEA), and plaintiffs' proposal to order all black faculty recalled. In its opinion the court stated:

> To insure that the KBE maintains an upward thrust towards this [20% black faculty] goal, this court holds that once the KBE has recalled all Black tenured teachers, then all future recalls are to be based on seniority, so long as at least 20% of all recalls in any one year are filled by Black employees. Where a seniority based recall would result in the return of less than 20%, then Black teachers must be recalled out of order to the extent necessary to achieve this percentage. *If the district should ever reach a point where the only teachers left in the recall pool are either non-Black or Blacks who are not certified for available jobs, then it must recall no more than 80% non-Black, while hiring so as to achieve 20% Black*

*Id.* at 754 (emphasis added). The order is on appeal to the Court of Appeals for the Sixth Circuit.

The issue emphasized in the above-quoted portion of the opinion is again before the court. Plaintiff-intervenors KEA and MEA have moved for a partial stay pending appeal. It appears that the KBE is prepared, on Thursday, October 14, 1982, to follow the court's order by hiring a new black, probationary teacher to fill a position for which no blacks in the recall pool are qualified, but for which there are qualified, tenured, white teachers still in the recall pool.

## JURISDICTION

Plaintiffs oppose the motion on jurisdictional grounds, but Fed.R.App.P. 8 clearly requires an application for a stay pending appeal to be sought in the first instance in the district court.

## STANDARDS FOR STAY PENDING APPEAL

As stated by this court in *United States v. State of Michigan*, 505 F.Supp. 467, 470 (W.D.Mich.1980):

> To obtain a stay of a district court injunction pending an appeal, certain familiar tests must be met. The standard is set forth in *Virginia Petroleum Jobbers Ass'n v. F.P.C.*, 259 F.2d 921 (D.C.Cir.1968), and may be paraphrased as follows:
>
> (1) Has the petitioner made a strong showing that it is likely to prevail in the merits of the appeal?
>
> (2) Has the petitioner shown that without such relief, it will be irreparably injured?
>
> (3) Would the issuance of a stay substantially harm other parties interested in the proceedings?
>
> (4) Where lies the public interest?

*A. Likelihood of Success on the Merits.*

The recent First Circuit decision in *Morgan v. O'Bryant*, affirming District Judge Garrity's orders of June 2 and July 9, 1981, in the Boston desegregation case, indicate a strong likelihood that this court's order will be affirmed on appeal. 671 F.2d 23 (1st Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 62, 74 L.Ed.2d 64 (1982). *Morgan* is factually distinguishable: the orders go only to recalls and not to new hirings; require only ratio maintenance; and involve a district which has already reached its goal of 20% black teachers. However, the real issue, as stated by the First Circuit, is strikingly similar:

We understand, and sincerely regret, the fact that the expectations of certain teachers have been defeated, but the alternative would be to defeat the expectations of the plaintiff class of school children and their parents. The district court struck a reasonable balance between these competing interests, and we therefore see no reason to disturb it. 671 F.2d at 29. In footnote 7, which accompanied the above text, the First Circuit noted, in part, "the contracts alone cannot bar a federal court from granting effective relief for constitutional violations. *See Arthur v. Nyquist,* 520 F.Supp. [961] at 965, and cases cited therein." Here too, the court has struck a reasonable balance which will allow further progress towards the 20% black teaching staff required to cure the constitutional violations it identified.

Moreover, in reviewing the standards for equitable remedies in school desegregation cases, as set forth in *Milliken v. Bradley,* 433 U.S. 267, 280–281, 97 S.Ct. 2749, 2757–2758, 53 L.Ed.2d 745 (1977), the order appears particularly appropriate. First, "[t]he remedy [is] related to 'the *condition* alleged to offend the constitution . . . .'" *Milliken, supra,* at 280, 97 S.Ct. at 2757 (citations omitted; emphasis in original). The court has identified KBE's failure to seek and obtain qualified black staff as a constitutional violation. 368 F.Supp. 143, 176, 180 (W.D.Mich.1973), *aff'd,* 508 F.2d 178 (6th Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975). The order of September 30, 1980 is certainly related to this condition.

Second, the order is "*remedial* in nature, that is . . . designed as nearly as possible 'to restore the victims of discriminatory conduct to the position they would have occupied in the absence of such conduct.'" *Mil-*

*liken, supra,* 433 U.S. at 280, 97 S.Ct. at 2757 (citation omitted; emphasis in original). By requiring an upward thrust toward a 20% black teaching staff, the order restores the victims of the discriminatory conduct (*students and their families*), to the position they would have otherwise occupied.

Finally, the order "takes into account the interests of the state and local authorities in managing their own affairs, consistent with the constitution." *Milliken, supra,* at 281, 97 S.Ct. at 2758. The court's remedy allows and requires KBE to advance toward its own goal of 20% black teaching staff, a goal it otherwise may be unable to pursue given declining enrollment and funds. *Cf. Morgan, supra,* 671 F.2d at 29 (court adoption of School Committee's own proposal "cuts in favor of the district court's decision . . . ."). The court finds, therefore, that there is not a likelihood of plaintiff-intervenors' success on the merits such as to justify a stay pending appeal.

**B.  *Irreparable Injury to Petitioner.***

The second test turns on irreparable injury to petitioner KEA. At least one KEA member, and perhaps more, will not be recalled as a result of the court's order, now on appeal. This alone does not rise to the status of irreparable harm. It is truly unfortunate, with today's falling enrollment and revenues, that experienced and dedicated teachers should be laid off. And to the individual teacher the burden may not be light. However, petitioner has not demonstrated irreparable injury to the court. The general statements contained in petitioner's brief[1] demonstrate that an individual teacher may be harmed, but there is not a

---

1.  "To the extent White teachers remain on layoff, they are denied the benefits of employment, including salary, fringe benefits (which include insurance for themselves and their families), accrual of seniority, contribution to their retirement, and all those other rights, privileges and benefits of employment which would have accrued to them were they not laid off. In addition, many of them have seen their unem-

ployment compensation benefits terminate. Finally, those teachers must suffer the indignity and hardship of continued unemployment in the face, now, of the hire of new, probationary teachers. There can be no question as to the harm this Court's Order has caused and will cause those teachers to suffer."

Plaintiff-intervenors' Brief in Support of Motion for Partial Stay, p. 5.

sufficient showing of irreparable harm to justify a stay.[2]

## C. Harm to Other Parties.

Laid off teachers' expectations must give way to the constitutional rights of the long-suffering plaintiffs in this action. The lack of proven irreparable harm to the KEA, discussed above, is even more important when viewed in terms of the injury to the truly innocent and injured plaintiff children and families. This third aspect of the test for a stay weighs heavily against granting the stay. The court, in issuing its permanent injunction, found the school system unconstitutionally segregated. The court noted:

> The adverse impact which racial isolation has upon Black and White children in terms of unrealistic self-images and detrimental attitudes is only intensified by a conspicuous absence of Black adults in positions of leadership and respect. This paucity of Black administrators and teachers was certainly a foreseeable result of board policies and was attributable to board policies. The damaging effect on students in Kalamazoo of the Board's deliberate inaction should be and is a matter within the purview of the Constitution, if that vital document is to be accorded substance.

368 F.Supp. at 180. In its order of November 4, 1981, the court stated, at p. 2:

> As in 1980, so in 1981, the interest of quality education and the interests of the school children, black and white, in having black role models in positions of responsibility and authority, are served by maintaining the pool of experienced black teachers in the district. Periods of economic difficulty must not be allowed to impede the district's efforts at providing a sufficient number of minority role models to its students of all races .... As in the past, this court is convinced that a denial of this relief will inflict irreparable damage on the development of the children enrolled in the Kalamazoo Public School system, especially on the attitudinal and emotional development of the district's black students.

Even now, nine years after the court made its injunction permanent, the percentage of black teachers is far below KBE's original 20% goal. Now KEA asks the court to stay its order, so that qualified teachers in the recall pool will be recalled before new hirings occur.

At the worst, this could result in the next 65 recalls involving 62 non-black and 3 black teachers. Affidavit of Robert Sikkenga, p. 2, as corrected at hearing of October 4, 1982. The protection of plaintiffs' constitutional rights will not tolerate this. More to the point, the importance of correcting the imbalance and its impact on innocent students is such that even one hiring which delays or reverses the upward thrust cannot be tolerated. The court earlier rejected plaintiffs' proposal that all black teachers be recalled, but it will not allow KBE or KEA to destroy orderly and necessary progress toward a goal of 20% black teachers.

## D. Public Interest.

The final test is the overall public interest. The court has stressed throughout this case the importance of eliminating the vestiges of past discrimination. KEA advances laudable goals in its argument, but the ad-

---

**2.** Plaintiffs raise a question concerning the status of the contract substitute pool, which was used last year in dealing with teachers displaced by the court's order to recall ten laid off black teachers. The pool was used in 1981 and again this fall for staff members to which the District was already contractually committed. All parties agree that the pool is not an issue here, although plaintiffs suggest it may be an element to be considered in analyzing the degree of injury to teachers not recalled as a result of the court's September 30, 1980 order.

After reviewing previous testimony regarding the reasons behind and the use of contract substitute pools, the court finds that the pool is not an issue here; that it has been useful in the past in allowing the District to meet its contractual commitments; that it does not have an impact on the teacher(s) now affected by the order of September 30, 1980; and that it does not offer an avenue of relief which the court need consider at this time, given the court's determination that petitioners have not shown sufficient injury to obtain a stay.

vantages gained by recalling tenured teachers instead of hiring new probationary teachers, and the public interest in reinforcing contractual expectations, simply do not compare with the public interest involved in ridding Kalamazoo schools of the terrible effects of segregation. The public interest lies strongly with the court's previous order.

CONCLUSION

The court, finding none of the tests for obtaining a stay to be met, denies the request for a stay pending appeal.